UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| J.L. STONEY COX, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:13-CV-151 |
| | § | |
| WILLIAM STEPHENS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Stoney J.L. Cox is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID), and is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff filed this lawsuit on May 28, 2012, challenging as unconstitutional certain policies and practices of the TDCJ-CID that Plaintiff claims violate his First Amendment right to practice his Native American religion, and also his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He named as defendants the TDCJ-CID Director William Stephens,[1] and the Native American Program Analyst, Clint Morris.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint

---

[1] Plaintiff named former TDCJ-CID Director Rick Thaler; however, William Stephens is the new TDCJ-CID Director, and he is therefore substituted in as the proper defendant. The docket will be changed to reflect the proper defendant.

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court: (1) dismiss Plaintiff's claim for money damages against both Defendants in their official capacities as barred by the Eleventh Amendment; (2) dismiss Plaintiff's First Amendment claim for money damages against Defendant Clint Morris in his individual capacity for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b); and (3) retain Plaintiff's First Amendment and RLUIPA claims for injunctive relief against Defendants William Stephens and Clint Morris, and that service be ordered on these Defendants.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. PLAINTIFF'S ALLEGATIONS

A Spears[1] hearing was held on July 9, 2013. The following allegations were made in Plaintiff's Original Complaint (D.E. 1), or at the hearing:

Plaintiff has been in TDCJ-CID custody since 1994, serving three concurrent forty-year sentences. He is in general population and lives in a dorm-like setting, not a cell. Plaintiff's ancestors were Choctaw, and eight years ago, Plaintiff began practicing his Native American faith. Tenets of his faith include: pipe ceremonies in which prayers are offered to the Creator; the wearing of a medicine bag or pouch at all times to protect him from evil; and not cutting one's hair except in mourning or upon death.

Plaintiff contends that the TDCJ-CID grooming policy, as well as other security and health policies, impinge on and substantially burden his ability to practice his faith in violation of the First Amendment and RLUIPA. The TDCJ-CID grooming policy requires that he cut his hair and he is not permitted to let it grow, or even to maintain a kouplock.[2] Although a Native American chaplain conducts circle ceremonies once a month, Plaintiff is not permitted to smoke either a personal or a communal pipe at the ceremony. Plaintiff is permitted to wear his medicine pouch outside of his housing area on Thursdays when going to or from a Native American class or ceremony, but he is not permitted to possess it while at work in the garment factory or in the chow hall.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] A kouplock is a small section of hair at the base of the skull that is grown longer than the rest of the hair, to conform with religious beliefs.

3 / 11

Plaintiff is suing TDCJ-CID Director William Stephens for implementing and enforcing policies that adversely affect his ability to practice his Native American faith. He is suing Clint Morris, the Native American Program Analyst, claiming that this official has failed to advocate on behalf of Native American prisoners in shaping TDCJ-CID policy such that he has personally violated Plaintiff's rights.

### III.    LEGAL STANDARD

As previously noted, Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id.

## IV.  DISCUSSION

### A.  Evaluation of Plaintiff's claims under the First Amendment and RLUIPA.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objectives.  Id.; Cruz v. Beto, 405 U.S. 319, 322, n. 2 (1972) (per curiam); Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  O'Lone, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In Turner v. Safley, the Supreme Court set forth four factors that a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest:  (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative

means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. Turner, 482 U.S. at 89-90; see also Chriceol v. Phillips, 169 F.3d 313, 316 (5th Cir. 1999).

The Religious Land Use and Institutionalized Persons Act ("RLUPIA"), 42 U.S.C. § 2000cc, "poses a far greater challenge than does Turner to prison regulations that impinge on inmates' free exercise of religion." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 858 n.1 (5th Cir. 2004). Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc-3(g). Monetary damages are not available to prisoner plaintiffs under RLUIPA. See Sossamon v. Texas, ___ U.S. ___, 131 S. Ct. 1651, 1663 (2011).

### B.    The Odneal case.

Similar claims to those raised by Plaintiff herein were previously raised by another Native American prisoner at the McConnell Unit before this Court in Odneal v. Pierce, Case No. 2:04-cv-454. This Court granted summary judgment in Defendants' favor on all claims. Plaintiff challenged on appeal only the dismissal of his RLUIPA claims

before the Fifth Circuit.  See Odneal v. Pierce, 324 Fed. Appx. 297, *2-3 (5th Cir. Apr. 3, 2009).

As to the RLUIPA claims, the Fifth Circuit affirmed this Court's granting of summary judgment in Defendants' favor on Odneal's claims concerning the frequency of the ceremonies, but remanded the case for consideration of the kouplock and medicine bag claims.  Odneal, 324 Fed. Appx. at *8.  After remand, the case was tried to the bench on December 13 and 14, 2010; however, Odneal was then transferred out of the TDCJ and his claims concerning the kouplock and medicine pouch were dismissed as moot.  (See Case No. 2:04cv454 at D.E. 195).  Thus, the status of the law in the Fifth Circuit is that allegations concerning the kouplock and medicine bag raise valid RLUIPA for purposes of § 1915A screening.

### C. Analysis.

Plaintiff testified as to the sincerity of his faith and claimed that TDCJ-CID's policies and practices place a substantial burden on his ability to exercise his religion. Thus, for purposes of § 1915A screening, Plaintiff has stated claims under the First Amendment and RLUIPA.  Thus, it is respectfully recommended that service be ordered on William Stephens in his official capacity as TDCJ-CID director, and on Clint Morris is his official capacity as the TDCJ Native American Program Analyst.

To the extent Plaintiff is attempting to sue either defendant in his official capacity for monetary damages, it is respectfully recommended that those claims be dismissed as

barred by the Eleventh Amendment. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from [state] officers in their official capacities.").

Plaintiff testified that he is suing Clint Morris for monetary damages in his individual capacity because Mr. Morris is the official in charge of advocating for Native American rights in regards to TDCJ-CID policy, but under his watch, those rights have actually been diminished.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). In addition, it is well established that a § 1983 plaintiff cannot obtain monetary damages or injunctive relief from a policy-maker or supervisor solely on a theory of respondeat superior. Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.), cert. denied, 464 U.S. 897 (1983). A supervisor who is not personally involved is liable under the theory of "supervisory

liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Thompkins, 828 F.2d at 304. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

Plaintiff contends that it is Mr. Morris' job to protect his First Amendment right to practice his religion such that, if Mr. Morris fails to do his job, he simultaneously violates Plaintiff's constitutional rights. However, the mere fact that Plaintiff is unsatisfied with Mr. Morris' job performance does not equate with a constitutional violation. Moreover, Plaintiff does not contend that Mr. Morris targeted Plaintiff personally to interfere with his rights. Indeed, Plaintiff is complaining about institutional policies, not the actions of a particular defendant. His claims against Mr. Morris are properly maintained against this Defendant in his official capacity only, and there is no basis to retain Plaintiff's monetary claims against him in his individual capacity.

## V. Recommendation

For the reasons stated above, it is respectfully recommended that the Court: (1) dismiss Plaintiff's claim for money damages against both Defendants in their official capacities as barred by the Eleventh Amendment; (2) dismiss Plaintiff's First Amendment claim for money damages against Defendant Clint Morris is in his individual capacity for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b); and (3) retain Plaintiff's First Amendment and RLUIPA claims for injunctive relief against Defendants William Stephens and Clint Morris, and that service be ordered on these Defendants.

Respectfully submitted this 15th day of July, 2013.

_____
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc)